UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| PAUL BLACK, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-258 |
| | § | |
| MICHAEL B. SCHMIDT, *et al*, | § | |
| | § | |
| Appellees. | § | |

**OPINION**

This is an appeal of the United States Bankruptcy Court's determination to approve a sale agreement negotiated by Toby Shor, Seashore Investments Management Trust, and 2004 GRAT (collectively, Shor) and to reject a settlement agreement negotiated by Paul Black and a number of his business entities[1] (collectively, Black), as well as offers from Walter Oblach.  At issue are:

- "Order Granting Joint Motion of Seashore and Michael B. Schmidt, Chapter 7 Trustee for the Debtors,[2] to Sell Certain Assets of the Debtors' Estates Pursuant to Bankruptcy Code Section 363(b) and to Approve Sale Agreement," D.E. 22-38;

- "Findings of Fact and Conclusions of Law on Joint Motion of Seashore and Michael B. Schmidt, Chapter 7 Trustee, to Sell Certain Assets of

---

[1]   The Notice of Appeal includes Paul Black, Individually and on behalf of Land & Bay Gauging, LLC, SGW Interests, LLC, BNP Operating, LLC, 5302 Mandell Property, LP, 5302 Mandell Property I, LLC, BNP Commercial Properties, LLC, BNP Commercial Properties, Ltd., HBP Ltd, HBP Partners, Ltd., BNP Networks, LLC, 500 N. Water, LLC, 5262 Staples, LLC, BNP Holdings, Ltd., 500 N. Water St. Property I, LLC, 500 N. Water St. Property, LP, 5262 Staples, Ltd., 5262 GP, LLC, 5262 Staples II, Ltd, 5262 Staples GP II, LLC, Bistro CP, LLC, Black Commercial Holding, LLC, Black Energy Resources Co., BNP Exploration Company, CCEX, LLC, Intrepid Oil & Gas, LLC, PBF Investments, Ltd., RPH Financial Investments Corp., TSE Equities I, LLC, James Black, III, James Black IV, and Wendy Bennett.  The Notice of Appeal refers to all of these parties as the "Black Entities."  This Opinion will refer to them as "Black" or "Black Entities."

[2]   Hereafter, referred to as "Trustee."

the Debtors' Estates Pursuant to Bankruptcy Code Section 363(b) and to Approve Sale Agreement," D.E. 22-39; and

- Oral rulings in the July 26, 2011 hearing, the transcript of which is filed as D.E. 22-55, and which are incorporated into the Order, D.E. 22-38.

As a preliminary matter, Shore and the Trustee move to dismiss the appeal as moot under 11 U.S.C. § 363(m).  D.E. 24, 26.  For the reasons set out below, the motions to dismiss are GRANTED IN PART and DENIED IN PART.  All issues other than "good faith" are dismissed as moot.  For the further reasons set out below, the Court OVERRULES Black's issue regarding "good faith" and AFFIRMS the Bankruptcy Court's Order.

## BACKGROUND

Paul Black (Black), members of his family, and a number of business entities in which he owns an interest have been in litigation with Toby Shor, Seashore Investments Management Trust, and 2004 GRAT (collectively, Shor) for several years and in several venues over Shor's monetary investments in, and loans to, Black's enterprises.  Two of Black's businesses, BNP Petroleum Corporation[3] and BNP Oil & Gas Properties, Ltd.,[4] (jointly referred to as BNP or Debtors), were placed into bankruptcy proceedings and jointly administered as Chapter 7 liquidation cases, with Michael B. Schmidt (Trustee) appointed as Trustee for each.  D.E. 22-11.

On August 17, 2010, after the automatic stay of bankruptcy was lifted to permit the state court litigation of certain claims, Shor obtained an arbitration award against

---

[3]   An involuntary Chapter 7 petition was filed against BNP Petroleum on April 3, 2009.  On August 5, 2009, the Bankruptcy Court entered an order for relief under Chapter 11.  By Order of October 13, 2010, the case was converted back to a Chapter 7 and Michael B. Schmidt, who had previously served as Litigation Trustee, was appointed to serve as the Chapter 7 Trustee.  D.E. 22-11.

[4]   BNP Oil & Gas Properties, Ltd. filed a voluntary petition under Chapter 11 on September 22, 2009.  On October 13, 2010, this case was converted to Chapter 7, with Schmidt appointed Trustee.  D.E. 22-11.

Black of approximately $30 million.  The award was confirmed in the form of a judgment in *PBF Investments, Ltd. v. Toby Shor, et al*, No. 09-60343-3, in the County Court at Law No. 3, Nueces County, Texas (State Court Action) on April 6, 2011.  D.E. 22-65.  Based on the findings of Douglas J. Brickley, Examiner (D.E. 22-67) and the arbitration panel's findings of fact and conclusions of law, the Trustee filed against both Shor and Black an action entitled *Michael B. Schmidt, Trustee v. Paul Black, et al*, Adversary No. 10-2022, in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (Adversary Proceeding).  D.E. 22-63.

In the Adversary Proceeding, the Trustee claimed that both sets of defendants had benefited from improper transfers from the Debtors, alleging, *inter alia*, theories of fraudulent transfer and conversion, and seeking a turnover of property of the Estates. D.E. 22-11; 22-63 (Third Amended Complaint).  Along with her answer to the Adversary Proceeding complaint, Shor filed a counterclaim against the Trustee, seeking attorney's fees.  D.E. 22-64.  Shor further filed an objection to the Trustee's request for attorney's fees as an administrative expense in the bankruptcy cases.  *See* D.E. 22-55, p. 75.

Shor took action to collect on the $30 million judgment through the state court and in this Court.[5]  D.E. 22-66 (Application for Turnover Order).  With Shor's effort to obtain turnover of Black's ownership interest in his businesses through the State Court Action looming, Black negotiated with the Trustee a settlement of the Adversary Proceeding (Black Settlement).  The resulting agreement was dated June 8, 2011.  D.E. 22-61.  As a result of that agreement, Black transferred his ownership interests in his businesses to the

---

[5]   *See Zephyrus v Shor*, No. 11-cv-329 (S.D. Tex., Feb. 13, 2013), *aff'd*, No. 13-40456, 558 Fed. App'x 439 (5th Cir. March 14, 2014) (per curiam).

Trustee and thus escaped being ordered to turn those interests over to Shor.  D.E. 22-31, pp. 17-18; 22-61.  The settlement and its concomitant transaction were recited in open court in the State Court Action.  D.E. 22-31, pp. 17-18; 22-55, p. 58.

Because of the fact that the Trustee was acting on behalf of the Debtors' Estates, the Black Settlement was expressly "subject to final approval from the Bankruptcy Court."  D.E. 22-61, p. 2.  "The Parties agree that they will seek the entry of an order by the Bankruptcy Court authorizing the implementation of all actions contemplated by this Agreement."  *Id*. at 6.  That qualification was disclosed to the state court.  D.E. 22-31, p. 27.  Nothing in the Black Settlement expressly precluded the Trustee from negotiating any other agreements that might better resolve the issues confronting the Estates.  Neither did the Black Settlement provide any disincentives that would compensate Black if the Trustee failed to get the Black Settlement approved.

According to the Black Settlement, Black agreed to pay the sum of $1.5 million as follows:

> Monthly proceeds paid to the Trustee generated from operations of Black Entities, equal to 10% of the net proceeds, of each operation of all Black Entities and which are payable on a month-to-month basis from the Effective Date of the Settlement Agreement.  Nothwithstanding, [sic] Black shall make to the Trustee minimum monthly payments of $6,000 per month, beginning July 1, 2011 and continuing with regular monthly payments thereafter of no less than $6,000 until July 1, 2021 when the entire remaining unpaid balance shall be due.

D.E. 22-61, p. 3.  Performance of this payment schedule was secured by Black's transfer of his ownership interests in the Black Entities to the Trustee, to be reconveyed to Black upon payment in full or upon final liquidation of all Estate assets.  *Id*. at 2.

There was no provision for any up-front cash payment and the success of the Black Settlement depended upon the financial performance of the Black Entities, with Paul Black's cooperation.   Moreover, the Black Settlement would not end all of the bankruptcy-related litigation.   The bankruptcy case would have to remain open for many years pending receipt of the full $1.5 million and the Trustee would still have to litigate the claims against Shor as well as the dispute regarding administrative expenses.

After the Black Settlement was executed, but before it was approved by the Bankruptcy Court, Shor offered and the Trustee accepted a competing agreement. According to the Sale and Conveyance of Estates' Rights, Settlement and Mutual Release (Shor Sale, D.E. 22-60), Shor would purchase the Trustee's claims against Black in the Adversary Proceeding in exchange for a cash payment of $216,000.   *Id*. at 2.   In addition, from the proceeds of any collection from Black (net of contingent legal fees), Shor would pay the Trustee 50% of the first $500,000 recovered and 10% of all other amounts recovered up to a total amount of $1.75 million.   *Id*. at 3.   Shor had incentive to collect and had her $30 million judgment as a head start.

Also part of the Shor Sale was:   (a) Shor's withdrawal of her objection to the Trustee's administrative expenses; (b) the liquidation of Shor's claims against BNP; and (c) the subordination of Shor's claim to those of other BNP creditors except Black.   D.E. 22-60.   Mutual releases would then end the Adversary Proceeding claims between Shor and the Trustee and the transfer of the claims against Black would remove the Trustee from the Adversary Proceeding altogether, ending the Estates' generation of

administrative expenses for litigation.  Like the Black Settlement, the Shor Sale was subject to Bankruptcy Court approval.  *Id.* at 6-8.

Pursuant to his contractual and statutory obligations to do so, the Trustee filed motions in the Bankruptcy Court for approval of both the Black Settlement and the Shor Sale.  However, the Trustee clearly advocated the court's approval of the Shor Sale, which would preclude approval of the Black Settlement.  By the date of the hearing, a third player, Walter Oblach (Oblach), had entered the scene, making an offer to purchase the Trustee's causes of action against Black, promising more up-front cash than the Shor Sale and a greater contingent recovery from any collections.  However, Shor demonstrated that Oblach was a long-time friend of Paul Black, and a resident of Venezuela, who did not appear before the Court to support his offer or demonstrate his ability to fulfill his promises.  Oblach had testified on Black's behalf in the arbitration against Shor and his incentive to prosecute the claims against Black and to collect on them was treated with due skepticism.  D.E. 22-31, pp. 56, 74, 77, 81.

After notice and hearing, on July 26, 2011, the Bankruptcy Court approved the Shor Sale as being in the best interest of the Estates.  D.E. 22-38, 22-39.  The following day, Black filed his Emergency Expedited Motion Seeking Stay Pending Appeal.  D.E. 22-41.  The Bankruptcy Court held an expedited hearing.  D.E. 22-43, 22-48, 22-51, 22-56.  When asked what Black sought to stay by the court's order, Black's counsel responded:

> Well, the effects of the Court's rulings last week.  There was a settlement approval, there was a—excuse me, a settlement denial and a sale approval.  ***There's a doctrine of mootness that applies in the event that the stay's not in effect.***  Of

course, I guess we can go back to the District Court and ask for the Court to consider the Stay Pending Appeal at that point, but we figure—it's our position that with the Trustee being in possession of the property and with the—that property being [sic] constituting security for the Trustee and ***the prospect of that property being lost, that there could be some irreparable harm and damage; not only to Mr. Black but also to the estates as a result of the consequences of a failure to grant a Stay Pending Appeal***.

D.E. 22-56, pp. 5-6 (emphasis added).  The Bankruptcy Court noted that Shor had already paid the $216,000 required by the Shor Sale and the judge imposed a one-week stay, suggesting that, if a longer stay was required, it should be sought and obtained in this Court.  D.E. 22-56, pp. 7-9.  As part of that ruling, the Trustee was informed that he should re-convey the interests in the Black Entities that had been conveyed to him pursuant to the rejected Black Settlement at the expiration of the one-week stay unless this Court imposed an additional stay.  *Id*. at 10.

Black then filed his Notice of Appeal (D.E. 1-2) centered on the argument that the first-negotiated Black Settlement precluded the Trustee from negotiating and advocating the approval of the Shor Sale.  D.E. 23.  At the same time, he sought an emergency stay in this Court.  D.E. 2.  Judge Rainey issued a temporary stay pending additional time to consider the matter.  D.E. 11.  Shor then filed an emergency motion seeking termination of the temporary stay, complaining that Black was wasting the assets subject to collection pursuant to the Bankruptcy Court order on appeal and that a lender on one of the assets was seeking foreclosure.  D.E. 15.  Judge Rainey granted Shor's motion, terminated the temporary stay, and denied Black's request for any further stay.  D.E. 21.

Black did not seek any relief from this Court's denial of the stay.  So Shor and the Trustee released their claims against each other in the Adversary Proceeding and Shor was then free to, and in fact did, pursue collection of her judgment for both herself and the Trustee against Black.  At the same time the parties briefed the merits of this appeal, they briefed Shor's motion to dismiss the appeal as moot because no stay was preventing the parties from taking action in reliance upon the Bankruptcy Court's order of sale.  D.E. 24, 26, 28, 30.

## MOTIONS TO DISMISS

### A. Appeals of Sale Orders are Subject to Being Mooted Absent a Stay

Mootness is a jurisdictional issue.  If a controversy becomes moot during the trial or appellate process, the court involved must dismiss the suit for want of jurisdiction. *Securities & Exchange Commission v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972) (discussing mootness under the U.S. CONST. art. III "case or controversy" clause).  The federal courts are not empowered to issue advisory opinions "on an abstract or hypothetical question."  *Benton v. Maryland*, 395 U.S. 784, 788 (1969).  Mootness arguments can thus be pressed by the court or any party at any time. *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (raising the issue *sua sponte* on appeal); *Locke v. Board of Public Instruction*, 499 F.2d 359, 363-64 (5th Cir. 1974) (same).

Statutory mootness with respect to Bankruptcy Court orders allowing the sale of estate property is set out in 11 U.S.C. § 363(m) as follows:

> The reversal or modification on appeal of an authorization
> under subsection (b) or (c) of this section of a sale or lease of

> property does not affect the validity of a sale or lease under
> such authorization to an entity that purchased or leased such
> property in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and such
> sale or lease were stayed pending appeal.

This provision "patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *In re Energytec, Inc.*, 739 F.3d 215, 218 (5th Cir. 2013) (quoting *Gilchrist v. Westcott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990)).

The Seventh Circuit faced the question whether § 363(m) mootness applied if the challenge on appeal was to the bankruptcy court's jurisdiction to enter the sale order in the first place. *In re Sax*, 796 F.2d 994, 997 (7th Cir. 1986) (quoted with approval by the Fifth Circuit in *Gilchrist*). The Seventh Circuit held that the bankruptcy court had jurisdiction to determine its jurisdiction. *Id*. at 998. The bankruptcy court's holding that it had jurisdiction to enter the sale order was a determination that could not be appealed properly without a stay pending appeal, despite the usual maxim that subject matter jurisdiction may be raised at any time. *Id*. This demonstrates that the statutory mootness issue is stringent and broad.

The section "codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved." *Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006); *see also Hardage v. Herring Nat'l Bank (In re Hardage)*, 837 F.2d 1319, 1323 n. 3 (5th Cir. 1988) (Section 363(m) provides finality). By providing good faith purchasers with a final order and removing the risks of protracted litigation, § 363(m) "allows bidders to offer fair

value for estate property[,]" which "greatly benefits both the debtor and its creditors." *In re Rare Earth Minerals*, 445 F.3d at 363.

There is one exception arising out of the language of § 363(m), itself, which requires a sale protected by mootness to be an "authorization to an entity that purchased or leased such property in good faith."   Because of this qualification, a party may challenge a sale order without a stay pending appeal if the challenge is to the purchaser's good faith and that error was preserved in the bankruptcy court.  *Sax, supra* at 997 n.4 (lack of good faith may be challenged if raised on appeal); *Gilchrist, supra* at 561 (lack of good faith must first be challenged in the bankruptcy court proceedings (citing *Moody v. Empire Life Ins. Co. (In re Moody)*, 849 F.2d 902, 905 (5th Cir. 1988) for the requirement of preserving this particular claimed error).

Shor, joined by the Trustee, argues that no stay pending appeal is in place and that the sale transactions approved by the Bankruptcy Court have been substantially completed.  D.E. 24, 26.  Therefore, § 363(m) has mooted the appeal.  Black responds that § 363(m) does not apply because:  (a) Shor and the Trustee have not consummated the sale, with the exception of Shor's payment of $216,000 which is held in trust pending appeal, making this Court's ability to grant relief possible and making a stay superfluous; and (b) the Shor Sale was not the product of good faith as required to trigger the statute.

**B.  The Required Stay Pending Appeal Was Not Superfluous.**

In *Taylor v. Lake (In re Cada Investments, Inc.)*, 664 F.2d 1158 (9th Cir. 1981), the Ninth Circuit held that the mootness doctrine did not moot the appeal of an order approving the sale of a tract of real estate because the sale was made subject to appeal.

However, the facts in *Taylor* are substantially different from ours.  In *Taylor*, the receiver had tried to sell the property at public auction but had received no suitable bids.  After the bankruptcy court authorized a private sale of the property, Taylor offered to purchase it for $300,000.  Before the receiver accepted that offer, a general creditor in the case informed the receiver that another potential buyer would offer more.  Lake, who was willing to pay $350,000 had tried, but had been unable to get through to the receiver to make his offer prior to the bankruptcy court's order approving the sale.

Upon the creditor's motion, the bankruptcy court set aside the order approving the Taylor sale and Lake subsequently obtained an order approving the sale to him for $350,000.  In the meantime, Taylor had appealed the order setting aside the Taylor sale approval order.  So the bankruptcy court's order approving the Lake sale expressly made the order subject to the outcome of the Taylor appeal.  The case did not involve an appeal of the Lake sale order, itself.  And the Lake sale order would not take effect if Taylor succeeded in his appeal.  In essence, the Lake sale order was accompanied by a stay pending appeal by its own terms.

In contrast, the bankruptcy approval order approving the Shor Sale does not make it subject to appeal.  The only relevant provision in the agreement between the Trustee and Shor is that which requires the $216,000 cash payment to be held in trust pending appeal.  Other provisions of the Shor Sale were permitted to, and did in fact, proceed.  Shor pursued her collection efforts against Black without the Trustee's interference.  The Trustee conveyed the ownership interests in the Black Entities that he had obtained from Black to Shor.  Shor took possession of properties owned by the Black Entities and

liquidated what she could.   No "subject to appeal" provision prevented substantial consummation of the sale order that Black now seeks to defeat.

Pursuant to the foregoing discussion, the Court rejects Black's argument that no stay was necessary because the contractual agreement was not substantially consummated but remained subject to appeal.   The Court further holds that, without a stay pending appeal, the only issue that Black may challenge is that of Shor's "good faith."   Thus the motions to dismiss (D.E. 24, 26) are GRANTED IN PART, dismissing as moot all bases for appeal other than Shor's "good faith."

### C. Black May Challenge Shor's Good Faith

With respect to "good faith," the Court finds that Black preserved the issue in the Bankruptcy Court by (a) denying in his response those paragraphs of the Trustee's motion to approve the Shor Sale that addressed good faith and (b) by offering proposed findings of fact and conclusions of law related to a lack of good faith.   Trustee's Motion, D.E. 22-14, pp. 3, 9; Black's Response, D.E. 22-24, pp. 3, 4; Proposed Findings of Fact and Conclusions of Law, D.E. 22-33, pp. 11-12.   The Court further finds that Black has raised the issue of "good faith" by response to the motions to dismiss and in his appellate briefing in this Court.   D.E. 23, 28.   Therefore, reading Black's "good faith" challenge broadly and for the reasons set out above, the Court DENIES IN PART the motions to dismiss with respect to Black's claim that Shor did not purchase in good faith.

## APPEAL OF SHOR'S GOOD FAITH

The Bankruptcy Court made multiple findings of fact and conclusions of law in connection with its determination that the Shor Sale was negotiated and proposed for approval in good faith and that Shor was a bona fide purchaser, including:

- The Black Settlement "was announced in court and it contained no bargain for, no-shop provision, nor did it contain any fiduciary out limitations.  And subsequent to that agreement Ms. Shor negotiated with the Trustee and reached a, what the Trustee believed was a better agreement which the Trustee then had a fiduciary obligation to bring to the Court's attention and has filed a motion to approve that."  D.E. 22-55, p. 94.  There were no break-up or topping fees involved, either. D.E. 22-55, pp. 62, 66.

- It is "ORDERED that Seashore is a bona fide purchaser in good faith entitled to all of the protections of Bankruptcy Code section 363(m), and the sale transaction may not be avoided under Bankruptcy Code section 363(n) . . . ."  D.E. 22-38, p. 2.

- "Good faith.  The [Shor Sale] has been proposed, negotiated and entered into by the Trustee and Seashore without collusion, in good faith, and from arm's-length bargaining positions.  . . . Seashore is a bona fide purchaser of the assets described in the Motion and has proceeded in good faith in all respects in connection with this proceeding.  Accordingly, Seashore is entitled to all of the protections of Bankruptcy Code Section 363(m).  Neither the Trustee nor Seashore have engaged in collusion or in any conduct that would cause or permit the transaction to be avoided under Bankruptcy Code section 363(n)." D.E. 22-39, pp. 1-2.  *See also*, D.E. 22-39, p. 10.

Black's only appellate issue that challenges the "good faith" determination and the only issue that this Court may consider is that stated as:  whether "[t]he Bankruptcy Court abused its discretion and erred when making the following findings of fact:  Findings, ¶ B – That the [Shor Sale] was negotiated and entered in good faith and arm's-length bargaining positions."  Issue A(i)(a), Appellant's Brief, D.E. 23, p. 7.  All of the other issues and sub-issues are moot and have been dismissed.

Generally speaking, the Fifth Circuit has acknowledged that, "In reviewing the rulings of the bankruptcy court on direct appeal and the district court sitting in bankruptcy, we review findings of fact for clear error and conclusions of law *de novo*. We review mixed questions of law and fact *de novo*." *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 519 (5th Cir. 2014) (per curiam) (internal citations omitted).   More specifically, the Fifth Circuit has acknowledged that the standard of review to be applied to the Bankruptcy Court's good faith findings under § 363 is "a matter of some confusion in our circuit." *TMT Procurement*, 764 F.3d at 520-21.

> On the one hand, we have stated that when a district court hearing a bankruptcy appeal dismisses an appeal from the bankruptcy court as moot, we review that dismissal *de novo*. *In re Ginther Trusts*, 238 F.3d at 688.   Similarly, the Sixth Circuit has held that "good faith" is a mixed question of law and fact.   *In re Revco D.S., Inc.*, 901 F.2d 1359, 1366 (6th Cir.1990) (reviewing finding of "good faith" under § 364(e)). This would suggest that the good faith determinations by the lower courts are subject to a *de novo* determination.   On the other hand, we have previously reviewed a bankruptcy court's "good faith" determination under § 363(m) for clear error.   *In re Beach Dev. LP*, No. 07–20350, 2008 WL 2325647, at *2 (5th Cir. Jun. 6, 2008).   District courts in our circuit have done the same.   *In re Camp Arrowhead, Ltd.*, 429 B.R. 546, 550–52 (W.D. Tex. 2010).

*TMT Procurement, supra* at 521 n.24.   The Fifth Circuit, holding that their decision was the same under either standard of review, did not resolve the confusion in that case or in any other case in the four months between the date the *TMT Procurement* opinion was issued and the present.   However, as in *TMT Procurement*, the standard of review does

not make a difference to the challenge to the Bankruptcy Court's "good faith" finding in this case.

Black's argument is predicated entirely on the fact that the Trustee had executed the Black Settlement, had acted upon the Black Settlement in the State Court Action, and then entered into confidential negotiations with Shor resulting in the Shor Sale, which effectively prevented the Black Settlement from being approved.  According to Black, even though the Black Settlement was expressly subject to Bankruptcy Court approval, it precluded the Trustee from considering or seeking the approval of any other offers.

As briefed, the question for this Court is whether the Trustee could, in good faith, negotiate more than one agreement—agreements that are inconsistent with each other— to resolve certain claims, pending the Bankruptcy Court's determination of which agreement to approve.  Nothing in Black's briefing squarely addresses the good faith of Shor, as purchaser.  However, the Court construes the briefing broadly, and will address whether complaints about the Trustee's negotiation of the Shor Sale reflect upon Shor or demonstrate a lack of good faith on the part of the Trustee that taints the entire transaction.  This evaluation must be made in the context of the Trustee's obligation to the BNP Estates and to the Bankruptcy Court.  The Trustee's duties determine whether he acted in good faith in negotiating and advocating the Shor Sale over the Black Settlement.

The Fifth Circuit has characterized the "good faith" required by § 363(m) as a lack of "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *E.g., Bleaufontaine, Inc. v. Roland*

*Int'l (In re Bleaufontaine, Inc.)*, 634 F.2d 1383, 1388 n.7 (5th Cir. 1981) (quotation marks omitted).  At issue here is the Trustee's duty to entertain all serious offers.  *Cadle Company v. Mims (In re Moore)*, 608 F.3d 253, 264-65 (5th Cir. 2010).  He must do so because he has the duty to maximize the value of the estate.  *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 352 (1985).

For that reason, no agreement is final and enforceable until approved by the bankruptcy court—as expressly set out in both the Black Settlement and the Shor Sale.

> "Everyone who deals with a bankruptcy trustee in a transaction that is not in the ordinary course of business is charged with the knowledge that the law may require court approval . . . ."  A proposed settlement may bind the parties, but it does not bind the courts; otherwise, the approval process would be meaningless.

*Moore*, 608 F.3d at 266 (quoting *Goodwin v. Mickey Thompson Entertainment Group, Inc. (In re Mickey Thompson Entm't Group, Inc.)*, 292 B.R. 415 (9th Cir. BAP 2003).  Yet, nothing about an agreement's "binding" nature can preclude the Trustee from entertaining additional offers.

> As a general matter, the trustee must demonstrate that the proposed sale price is the highest and best offer, though a bankruptcy court may accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal.

*Moore*, 608 F.3d at 263 (citing 3 COLLIER ON BANKRUPTCY ¶ 363.02[1][f] (15th ed. rev. 2009)).

Under these Fifth Circuit guidelines, and reviewing the record as a whole, the Court agrees with the Bankruptcy Court's assessment that the Trustee had a duty to

entertain Shor's offer, which precludes treating the Black Settlement as final or exclusive. The Trustee further had the duty to advocate the offer that he deemed to be the highest and best offer.  According to the evidence, Shor's offer provides some guaranteed value, has a greater potential recovery on the contingent future percentage of collections than that promised by the Black Settlement, and ends controversies that diminish the estate through administrative expenses.  Oblach's offer, while potentially involving a larger recovery, suffered from Oblach's failure to appear and demonstrate his ability and willingness to make his offer work.  Given Oblach's personal friendship with Black, the Trustee and the Bankruptcy Court were correct to discount the sincerity or ultimate likelihood of success of Oblach's promises, which required adverse actions against his long-time, personal friend.

The fact that the Shor negotiations were confidential cannot be actionable.  The Trustee's negotiations with Black were also confidential and both agreements, once made, had to be fully disclosed to the Court and to all parties in an approval process involving a hearing at which all parties could be heard.  The fact that the Shor Sale included the withdrawal of Shor's objections to the Trustee's professional fees does not change the analysis because that part of the agreement was fully disclosed and subject to court approval.  There was no evidence that the agreement was fraudulent, collusive, or took advantage of any other bidder simply because the professional fee issue was an issue disposed of by the agreement.  It certainly provides a benefit to the estate to eliminate the additional fees and expenses that it would cost to litigate the issue.  And if the expenses

were truly improper, then nothing about the Shor Sale agreement prevented any other party from voicing their own objection.

Black also argued that the Trustee should have engaged a formal sale procedure, soliciting additional bids for the claims against Black that the Estates had to sell. "Whether to impose formal sale procedures is ultimately a matter of discretion" that we leave to bankruptcy courts. *Moore*, 608 F.3d at 265 (quoting *Mickey Thompson*, 292 B.R. at 422). The Trustee testified, and it was uncontroverted, that there is no market for the sale of contentious litigation. D.E. 22-31, p. 51. Nothing that Black has briefed calls into question Shor's status as a good faith purchaser with respect to the provisions of the Shor Sale.

### CONCLUSION

Thus there was no proof of fraud, collusion, or the taking of unfair advantage of other bidders connected with the Shor Sale. Motions for Bankruptcy Court approval of both the Black Settlement and the Shor Sale were properly noticed with an opportunity for hearing. The Court FINDS, under both a *de novo* and clear error review, that the Bankruptcy Court did not err in determining that Toby Shor, Seashore Investments Management Trust, and 2004 GRAT are good faith purchasers under 11 U.S.C. § 363(m) and the Bankruptcy Court's order approving the Shor Sale (D.E. 22-38) is AFFIRMED.

ORDERED this 27th day of January, 2015.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE